SCHNEIDER GRANITE COMPANY v. INDEPENDENT BREWERIES COMPANY, Appellant.

Division Two, May 26, 1914.

CITIES: Public Improvements: Benefit Districts: Streets. Section 14, article 6, of the Charter of St. Louis provides that no ordinance for street improvement by benefit districts shall be passed unless recommended by the board of public improvements, and that such board shall call a public meeting to consider the proposed improvement, etc., and if, within fifteen days after the meeting, the owners of the major portion of the land made taxable, etc., shall file their remonstrance, the board shall consider such remonstrance, etc. *Held,* that the boundaries of a benefit district should be fixed when it first becomes necessary that its exact extent be known, and hence at the time within which the property owners may protest, since, if the district be not known, it would be impossible to determine the owners of a major part of the land made taxable.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

REVERSED AND REMANDED.

*Johnson, Rutledge & Lashly* for appellant.

*Hickman P. Rodgers* and *Rodgers & Koerner* for respondent.

*William E. Baird* and *Truman P. Young, amici curiae.*

WILLIAMS, C.—The controlling facts of this case (except as herein-below noted) are the same as those involved in the case of The Schneider Granite Company v. Gast Realty & Investment Company and Emily Gast decided by Division Two of this court at the present term and reported in 259 Missouri Reports at page 153. The present case differs from the above-mentioned case with reference to the situation discussed in paragraph III of the above opinion. At the time the ordinance was passed authorizing the work Hornsby avenue was the next parallel street west of that portion of the improved street upon which the land herein involved fronted. Before the work of the improvement was consummated said parallel portion of Hornsby avenue was vacated, and Church road was extended northward. This extension of Church road was about 150 feet farther away from the improved street than was Hornsby avenue. The district line at this place was drawn one-half way between the improved street and the parallel extension of Church road which, as above stated, was the next parallel street at the time the work was completed. This brought into the benefit district a small portion of the land involved in the present tax bill. The portion so brought in and included in the present tax bill was approximately 70 feet by 136 feet. This was approximately one-seventh of the total area involved in the present tax bill. In determining the correctness of the district line at this place it becomes necessary to determine at what time the benefit district is to be fixed. If the benefit district is to be fixed at or before the date of the passage of the ordinance authorizing the work as contended by appellant, then the above-mentioned tract was erroneously included in the benefit district, but if the district is to be fixed as of the date of the final

completion of the work as contended by respondent, then the district line was properly located and the above tract correctly included in said tax bill. The charter does not expressly state the time that the district shall be fixed. In passing upon this charter provision it has been held by this court in former opinions that the charter acts automatically in fixing the benefit district, but we are not aware that it has ever been decided as to *when* the automatic action of the charter occurs. After a careful consideration of the charter provision, aided by argument and brief of counsel, we have come to the conclusion that, in the absence of any express provision in the charter providing a different time, the boundaries of the benefit district should be fixed with reference to the conditions existing at the time it first becomes necessary that the exact extent or boundaries of the benefit district be known for the purpose of determining any matter necsary to be determined in connection with said public improvement. Section 14, article 6 of the Charter provides that no ordinance for any such public improvement shall be passed unless recommended by the board of public improvements, and further provides that said board shall call a public meeting to consider such proposed improvement by publishing for two weeks a notice thereof stating the time and place of the meeting and the matter to be considered thereat. The charter then further provides:

"If within fifteen days after such public meeting, the owners of the *major part of the area of the land made taxable by this article* for such improvement shall file in the office of the board of public improvements their written remonstrance against the proposed improvement or against the material or manner thereof, the board shall consider such remonstrance, and if said board shall, by a two-thirds vote at a regular meeting approve of the improvement, material or manner remonstrated against, they shall cause an or-

dinance for the same to be prepared and report the same with the reasons for their action and the remonstrance to the assembly. If *such majority* fail to remonstrate within fifteen days or shall petition the board for the improvement said board may by a majority vote approve the same and shall cause an ordinance to be prepared and reported to the assembly therefor.''

Section 16, article 6 of the Charter provides:

''Upon the recommendation of any ordinance by the board of public improvements the assembly shall have the power, *when such ordinance shall be accompanied by a remonstrance as hereinbefore provided, by a vote of two-thirds* of the members-elect of each house and in all other cases by a vote of a *majority* of the members-elect of each house to pass such ordinance, and order the making of such improvement.''

From said charter provisions it clearly appears that it becomes necessary that the exact boundaries of the benefit district be known at the time within which the property owners may protest. If the district is not known or fixed at this time then it would be impossible to determine with accuracy whether the owners of a ''major part of the area of the land made taxable'' had filed a protest against the proposed improvement, or, on the other hand, to determine when '' *such majority*'' had petitioned for said improvement within the meaning of said charter. Furthermore, if the district is not fixed by the conditions then existing property owners in that vicinity would not be able to determine whether they in fact had a right to protest or what portion of their property should be considered in ascertaining the effect of their protest.

It necessarily follows from the conclusion above reached that the district line at the place in question should have been located one-half way between the improved street and the parallel portion of Hornsby avenue as it stood prior to its being vacated, and that

therefore a portion of the land included within the present tax bill was improperly included therein, and that the amount of the special tax assessed against defendant's property in the present case was excessive, and unauthorized by the charter of said city.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.

REVERSED AND REMANDED.